UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ODELL T. TAYLOR,

                 Petitioner,

                                    CASE NO. 05-CV-73909-DT
v.                                HONORABLE NANCY G. EDMUNDS

KURT JONES,

                 Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Odell Taylor ("Petitioner"), a Michigan prisoner confined at the Saginaw Correctional

Facility[1] in Freeland, Michigan, has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 alleging that he is being held in violation of his constitutional rights.  Petitioner

was convicted of third-degree criminal sexual conduct following a jury trial in the Macomb

County Circuit Court in 2002.  He was sentenced as a fourth habitual offender to 26 years, 8

months to 40 years imprisonment.

In his pleadings, Petitioner raises claims concerning the admission of opinion testimony,

prosecutorial misconduct, the effectiveness of trial counsel, the sufficiency of the evidence, the

timeliness of the habitual offender notice, and the validity of his sentence.  For the reasons

stated, the petition for writ of habeas corpus is denied.

---

[1]At the time Petitioner instituted this action, he was confined at the Carson City Correctional
Facility where Respondent used to be the warden.

# I.    Basic Facts and Procedural History

Petitioner's conviction arises from his sexual assault of Cynthia Teed on April 5, 2001 in Roseville, Michigan. The Michigan Court of Appeals set forth the basic facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*. 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> The complainant testified that she was working alone at a Seven-Eleven store on the night of the incident. At about 3:00 a.m., defendant, whom she had never seen before, entered the store; nobody else was in the store at that time. According to the complainant, defendant grabbed her by the neck and took her into a store room in the back. She testified that in the store room defendant told her that he had a gun and that if she did not do what he told her, he would kill her. She said that he told her to take her jeans off, that she begged him not to do this to her, but that eventually she complied. Defendant then raped her. Defendant then had her accompany him back to the front part of the store where he had her open the cash register. She gave him the money and defendant himself grabbed the coins. She said that defendant then took her to the back room again and again raped her.
>
> The complainant testified that she was not an habitual Valium user, that the incident was not "a drug for sex exchange" between her and defendant, and that she did not consent to the sexual intercourse. Notably, the complainant said that after the incident her boss, Darlene (Barrow), asked her if she wanted Valium to calm her down and that she took the one Valium pill that Barrow gave her.
>
> In contrast, defendant testified that he met the complainant over a month before the charged incident when he went to the store. He said that he asked her for her phone number and that she wrote down the telephone number for the Seven-Eleven store and gave it to him. Defendant claimed that he spoke to the complainant on the telephone at least twice and that she eventually asked him if he knew where she could get some Valium. He said that after he told her he could get some Valium, she asked for about $50 worth. Defendant testified that the complainant indicated that she would be working on the night of the incident and that she would give him $50 from the cash register and pretend like she was robbed. Defendant said he gave her the pills, and she gave him $50 from the cash register. Defendant testified that the complainant then led him to an area of the store where they had consensual sex. She also told him to take some cigarettes from a stack, so he took two cartons.

*People v. Taylor*, No. 241310, 2003 WL 22439715, *1 (Mich. Ct. App. Oct. 28, 2003) (unpublished).

Following his conviction and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the claims concerning the admission of opinion testimony, prosecutorial misconduct, the effectiveness of trial counsel, the sufficiency of the evidence, the timeliness of the habitual offender notice, and the proportionality of his sentence. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *Id.* Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Taylor*, 471 Mich. 944, 690 N.W.2d 116 (2004).

Petitioner thereafter filed the present habeas petition, asserting the following claims:

I.     The trial judge violated his right to a fair trial by permitting the prosecution to elicit non-expert opinion evidence that the complainant's bruises were consistent with a sexual assault.

II.     The prosecutor deprived him of his state and federal constitutional due process right to a fair trial by appealing to the jury's sympathy for the complainant.

III.     He was denied the effective assistance of counsel when his trial attorney in closing argument misstated his prior criminal record allowing the court to inform the jury that he had additional otherwise unimpeachable convictions and failed to object to inadmissible testimony and prosecutorial misconduct.

IV.     His conviction for third-degree criminal sexual conduct must be reversed where the prosecution failed to present sufficient evidence to satisfy the due process standard of guilt beyond a reasonable doubt.

V.     His habitual offender conviction must be vacated where he did not receive actual notice of the charge until after his conviction.

VI.     He is entitled to appellate review of his sentence because the 320-month minimum term of imprisonment, the maximum-minimum sentence with in the 99 to 320 month sentencing guideline range, is disproportionate to the offense and the offender and an abuse of sentencing discretion despite being in accord with the statutory guidelines.

Petitioner also seems to raise additional sentencing claims in his petition, namely that his sentence violates his Sixth Amendment rights under *Blakely v. Washington*, 543 U.S. 296, 303-

05 (2004), and that he was subject to vindictive sentencing. Respondent has filed an answer to the petition asserting that it should be denied because the claims are unexhausted, procedurally defaulted, not cognizable upon habeas review, and/or lack merit. Petitioner has filed reply to that answer.

## II.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.     Analysis

### A.      Exhaustion of State Remedies

As an initial matter, Respondent asserts that the habeas petition should be dismissed because Petitioner has failed to properly exhaust state court remedies as to his vindictive sentencing claim.

A prisoner filing a petition for writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A Michigan prisoner must raise each issue he seeks to present in a federal habeas action to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. *See Mohn v. Bock*, 208 F.2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, state decisions employing constitutional analysis in similar fact patterns, or alleging facts well within the mainstream of constitutional law. *See McMeans v. Brigano*, 228 F.3d 674, 681-82 (6th Cir. 2000). The "'factual and theoretical substance of a claim must be presented to state courts to render it exhausted for federal habeas corpus purposes.'" *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citations omitted). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). Because the Court concludes that Petitioner's habeas claims lack merit, the interests of comity and federalism are better served by addressing Petitioner's claims rather than dismissing the petition based upon the alleged failure to exhaust state remedies. *See Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir.1999); *see also* 28 U.S.C. § 2254(b)(2) (authorizing courts to deny a habeas

petition on its merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). The Court, therefore, will proceed to address Petitioner's habeas claims.

B.      Admission of Opinion Testimony

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting opinion testimony from nurse Margaret Lane who testified that the victim's bruises were consistent with a sexual assault. The Michigan Court of Appeals set forth the relevant facts for this issue as follows:

> Nurse Lane testified that she was specially trained as a sexual assault nurse examiner and that she had examined "a hundred" women who had claimed to have been sexually assaulted. She testified in substantial detail about finding bruises on the complainant's left arm, neck, back, and genital area during her examination on the day of the alleged incident. In particular, Nurse Lane described bruising at three different locations around the complainant's urethra and a half-centimeter tear or laceration at the bottom of her vagina. Nurse Lane indicated that from her experience, the bruising found in the complainant's genital area was consistent with a sexual assault.

*Taylor*, 2003 WL 22439715 at *2. Respondent contends that this claim is barred by procedural default, is not cognizable upon federal habeas review, and lacks merit.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A

procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing this claim, the court relied upon a state procedural bar -- Petitioner's failure to object at trial. *See Taylor*, 2003 WL 22439715 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied this claim based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of

justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). In this case, Petitioner alleges the ineffective assistance of counsel as cause to excuse his default. Petitioner, however, cannot establish cause or prejudice as this claim lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994). The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins*, 251 F.3d 408, 419 (3rd Cir. 2001). Similarly, a determination as to whether an individual is qualified to give expert testimony involves only a state law evidentiary issue. *See United States ex. rel. Ruddock v. Briley,* 216 F. Supp. 2d 737, 743 (N.D. Ill. 2002); *see also Vaquez-Torrez v. Dorsey*, 66 F.3d 339, 1995 WL 539575, *1 (10th Cir. 1995). Thus, even if Nurse Lane's testimony was incorrectly admitted, this is the type of state law error in an evidentiary ruling which is not cognizable on habeas review.

Moreover, even if this claim is cognizable, Petitioner is not entitled to habeas relief. Petitioner has not shown that the admission of the disputed testimony from Nurse Lane was improper or rendered his trial fundamentally unfair. As discussed by the Michigan Court of Appeals, Nurse Lane's testimony was relevant to corroborate the victim's sexual assault allegation and was rationally based upon Nurse Lane's perceptions from examining numerous sexual assault victims. *See Taylor*, 2003 WL 22439715 at *2. Petitioner has not shown that the

state court's decision regarding the admission of this evidence is contrary to Supreme Court precedent or constitutes an unreasonable application of federal law or the facts.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence" means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

C.     Prosecutorial Misconduct

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by appealing to the jury's sympathy for the victim during closing arguments. The Michigan Court of Appeals set forth the relevant facts for this issue as follows:

> The prosecutor's remarks regarding what the complainant might have been thinking in connection with the incident were:
>
> I'm a good person. I don't deserve this. Why is this happening? I'm going to close my eyes and pretend that this isn't happening and then it's going to go away.
>
> That's what it must have been like for her as this is going on. She's never going to forget until the day she dies. She's going to try to be strong and overcome it.
>
> She's tried to talk about it to people, but she's never going to forget it.
>
> This was part of an overall argument in which the prosecutor asserted that the complainant was "not ready to talk about it just yet" in order to explain why she

did not immediately tell police officers about the sexual assault when they arrived at the scene.

In the context of the questions to the complainant about when the police first arrived at the scene, she testified that she did not immediately tell the police that she had just been raped. She explained:

When everybody started coming into the store there was [sic] three or four male police officers. There was a male detective, there was all men except Darlene, my boss. One of the officers actually is my cousin. I was very traumatized. I was in a state of shock. I was embarrassed. I don't even remember talking to half of them, and all I wanted to do was go home.

*Taylor*, 2003 WL 22439715 at *2-3. Respondent contends that this claim is barred by procedural default and lacks merit.

The Michigan Court of Appeals denied relief on this claim based upon Petitioner's failure to object at trial. *Id*. at *2. This constitutes a state procedural default. Petitioner must therefore establish cause and prejudice to excuse the default, or show that a fundamental miscarriage of justice has occurred.

Petitioner cannot establish cause or prejudice as this claim lacks merit. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is

determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

In reviewing this claim for plain error, the Michigan Court of Appeals found that the prosecutor's argument was proper because it was based on the victim's testimony discussing her delay in reporting the sexual assault to the police and addressed her credibility. *See Taylor*, 2003 WL 22439715 at 2-3. This Court agrees and finds that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. While a prosecutor cannot take actions which are "calculated to incite the passions and prejudices of the jurors," *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991), a prosecutor may argue from the facts that a witness is (or is not) worthy of belief, *see Portuondo v. Agard*, 529 U.S. 61, 69 (2000), and may argue reasonable inferences from the evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Although the prosecutor's argument may have reflected some sympathy for the victim, the argument was derived from the victim's testimony, was meant to explain her delay in telling the police that she had been sexually assaulted, and was made to support her credibility. Taken in context, it was not an improper appeal for jury sympathy. Furthermore, even if the argument could be seen as improper, it was not so flagrant as to deny

Petitioner a fair trial. Petitioner has failed to establish that the prosecutor erred, or that he was denied a fundamentally fair trial in this regard.

Lastly, as discussed *supra*, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

D.    Ineffective Assistance of Trial Counsel

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for inaccurately stating the Petitioner had no prior convictions for assaultive crimes, for failing to object to Nurse Lane's testimony, and for failing to object to prosecutorial misconduct. Respondent contends that these claims lack merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

### 1. Misstatement of Prior Record

Petitioner asserts that defense counsel was ineffective for misstating his prior record for assaultive crimes. The Michigan Court of Appeals set forth the relevant facts for this issue as follows:

> [Defense counsel] inaccurately stated in closing argument that he had no prior convictions for assaultive crimes "because if there were, you would have heard about it, I'm sure." This statement led the trial court to inform the jury that defendant had convictions in addition to those theft-related convictions disclosed during his testimony. Trial counsel's statement was clearly inaccurate because the presentence report indicates that defendant has a prior conviction for felonious assault. After this statement was made, the prosecutor asked to approach the bench. The trial court subsequently instructed the jury, in pertinent part:

> Apparently an inadvertent misstatement that relative to convictions for other than crimes involving dishonesty. [Sic] Any other such conviction could not be used to impeached [sic]. Only a witness' credibility, only crimes involving dishonesty can used [sic] to impeach a witness' credibility, so that would be the only type of crime you would hear about in this case.

*Taylor*, 2003 WL 22439715 at *3-4.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim, finding that Petitioner had failed to show that he was prejudiced by counsel's

14

misstatement of his criminal record.  The court explained:

> Assuming that trial counsel's inaccurate statement was objectively unreasonable, we nevertheless conclude that relief is not warranted because there is no reasonable probability that the statement affected the outcome of defendant's trial.  As an initial consideration, the trial court's corrective remarks did not directly apprise the jury that defendant had any convictions other than those brought out during his testimony.  Although the jury may have speculated that defendant had additional convictions, the fact that during cross-examination defendant admitted that he had previously been convicted of larceny by conversion over $100, receiving or concealing stolen property, and larceny between $200 and $1,000 substantially lessened the potential for further prejudice from speculation about other past crimes.

> More importantly, given the strong evidence of defendant's guilt, there is no reasonable probability that the outcome of the trial would have been different absent the suggestion of prior convictions.  In addition to the complainant's direct assertion that defendant sexually assaulted her, Nurse Lane's testimony that she observed bruises on the complainant's left arm, neck, and back, is more consistent with the complainant's allegation of rape than with defendant's claim of consensual sex.  Further, William Cooley, who had no apparent motive to lie, testified that he went to the Seven-Eleven store on the night of the incident and found that the office door was shut, which was unusual. Because he was waiting for someone to ring up the soft drink he wanted to buy, he knocked on the counter and asked for help, to which a male voice from the back room replied, "Come back later."  Then, a man, obviously defendant, and a woman whom Cooley recognized as a store employee exited the back room.  Cooley said the woman was hysterical and said that she had been robbed and raped.  Cooley testified that the man said, "She's trippin'. That's my wife."  If defendant's version of events were true, i.e., that the complainant and he agreed to a scheme in which she would steal money from the store and give it to defendant in return for some Valium, there is no plausible explanation for why she told a customer about the robbery rather than reporting it at a time when no one else would have seen defendant. Moreover, there was no apparent reason for her to have falsely claimed to have been raped.  Also, defendant's false claim that the complainant was his wife suggests consciousness of guilt.

> Moreover, Darlene Barrow, the owner of the Seven-Eleven store, testified that she offered and gave the complainant some Valium to calm her down after the incident.  This corroborated the complainant's testimony about the Valium. Nurse Lane indicated that she noted in her report that the complainant told her that she had taken some Valium.  The implausible nature of defendant's version of events strongly suggests that defendant simply seized on the fact that the complainant reported having taken Valium after the incident to concoct the scenario he offered for his defense.  Additionally, a police officer testified that DNA testing positively identified defendant as having provided DNA recovered

from the complainant. In light of that physical evidence, there was no plausible way for defendant to deny having engaged in sexual contact with the complainant. So, if he were to testify and deny the allegation of sexual assault, as a practical matter, he would have to claim a version of events involving consensual sexual activity. Barrow had no apparent motive to lie about giving the complainant Valium, and it would be a highly unlikely coincidence if the complainant had illicitly obtained Valium from defendant on the same date that Barrow also gave it to her. For all of these reasons, we conclude that there is no reasonable probability that trial counsel's inaccurate statement regarding defendant's prior convictions, which led to an arguably detrimental instruction by the trial court, affected the outcome of the trial.

*Taylor*, 2003 WL 22439715 at *3-4 (footnote omitted).

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. While Petitioner has shown that defense counsel erred in misstating his prior record, Petitioner has not demonstrated that he was prejudiced by counsel's conduct under the standard set forth in *Strickland*. As discussed by the Michigan Court of Appeals, the jurors was not told the nature of any prior assaultive crime when the trial court instructed them that only crimes involving dishonesty could be used to impeach witnesses, the jury was aware that Petitioner had prior theft-based crimes, and the prosecution presented significant evidence of guilt to support Petitioner's conviction. Habeas relief is not warranted on this claim.

      2.    <u>Failure to Make Objections</u>

Petitioner also asserts that defense counsel was ineffective for failing to object to Nurse Lane's opinion testimony and to the alleged prosecutorial misconduct. Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim, finding that Petitioner had failed to show that he was prejudiced by counsel's conduct in not objecting to Nurse Lane's testimony and the prosecutor's closing argument. *See Taylor*, 2003 WL 22439715 at *5. Given this Court's determination that these evidentiary and prosecutorial misconduct claims lack

merit, *supra*, Petitioner cannot establish that defense counsel was ineffective under *Strickland*. Counsel cannot be deemed deficient for failing to make a futile objection or motion.  *See McQueen*, 99 F.3d at 1328.  Habeas relief is not warranted on these claims.

       E.     <u>Insufficient Evidence</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his conviction.  Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d).  *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n. 16.  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."  *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a person is guilty of third-degree criminal sexual conduct if he or she engages in sexual penetration of another person and force or coercion is used to accomplish the sexual penetration.  *See* Mich. Comp. Laws § 750.520d(1)(b).  The Michigan Court of Appeals denied relief on this claim because it was not the court's job to weigh the credibility of witnesses and Petitioner had conceded that the victim's testimony, if believed, supported the verdict.  *See Taylor*, 2003 WL 22439715 at *5.

Having reviewed the record, this Court concludes that the Michigan Court of Appeals'
decision is neither contrary to Supreme Court precedent nor an unreasonable application of the
law or the facts. The victim's testimony provided sufficient evidence to establish Petitioner's
guilt of third-degree criminal sexual conduct. Additionally, the testimony of Nurse Margaret
Lane, witness William Cooley, and store owner Darlene Barrow, supported the victim's version
of events.

Petitioner's insufficient evidence claim essentially challenges the credibility of the
witnesses and the weight to be accorded the evidence at trial. However, it is well-settled that
"[a] federal habeas corpus court faced with a record of historical facts that supports conflicting
inferences must presume - even if it does not affirmatively appear in the record - that the trier of
fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."
*Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal
habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*,
280 F.3d 594, 618 (6th Cir. 2002). Given the evidence at trial, particularly the victim's
testimony, this Court concludes that a rational trier of fact could have found the elements of
third-degree criminal sexual conduct beyond a reasonable doubt. Habeas relief is not
warranted.

F.    Habitual Offender Notice Claim

Petitioner next asserts that he is entitled to habeas relief because he did not receive
actual notice of the habitual offender enhancement until after his conviction. Respondent
contends that this claim is unsupported by the record and without merit.

The Michigan Court of Appeals denied relief on this claim finding that Petitioner
received timely notice of the habitual offender charge as a matter of state law. *See Taylor*, 2003

WL 22439715 at *5. The court did not address this issue as a matter of federal law.

Accordingly, this Court must conduct an independent review of the state court's decision. *See*

*Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). This independent review requires the

federal court to "review the record and applicable law to determine whether the state court

decision is contrary to federal law, unreasonably applies clearly established law, or is based on

an unreasonable determination of the facts in light of the evidence presented." *Id*. This

independent review "is not a full, *de novo* review of the claims, but remains deferential because

the court cannot grant relief unless the state court's result is not in keeping with the strictures of

the AEDPA." *Id*.

Petitioner's claim that he received untimely or inadequate notice of the habitual offender

charge under Michigan law fails to state a claim which is cognizable upon federal habeas

review. *See Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240-41 (E.D. Mich. 1993). It is well-

settled that habeas relief may not be based upon a perceived violation of state law. *See, e.g.,*

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Moreover, due process does not require advance notice that a trial on a substantive

criminal charge will be followed by a habitual offender enhancement. Due process only

requires that a defendant be given reasonable notice and an opportunity to be heard. *See Oyler*

*v. Boles*, 368 U.S. 448, 452 (1962). Petitioner does not dispute that he had prior felony

convictions which justified habitual offender charges and sentencing enhancement. Further, the

record reveals that Petitioner and defense counsel received sufficient notice of the habitual

offender charge. The fourth habitual offender notice was filed on July 16, 2001. A plea hearing

document dated August 6, 2001 indicates that plea negotiations for third-degree criminal sexual

conduct and fourth habitual offender were conducted. Additionally, defense counsel

acknowledged the existence of the fourth habitual offender notice on the first day of trial. This was sufficient to satisfy due process. *See, e.g., United States v. Hudspeth*, 42 F.3d 1015, 1024 (7th Cir. 1994) (information filed 18 days after return of indictment and 23 days before plea gave adequate notice of prior convictions for enhanced sentence); *LaMere v. Risley*, 827 F.2d 622, 623 (9th Cir. 1987) (notice of intent to seek sentence enhancement given after conviction on underlying felony but three weeks before sentencing was sufficient). Petitioner also had an opportunity to be heard on the habitual offender charge at sentencing. Petitioner has thus failed to establish that he was denied due process. Accordingly, the Court concludes that the state courts' denial of relief on this issue is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Habeas relief is not warranted on this claim.

G.  Sentencing Claims

Lastly, Petitioner asserts that he is entitled to habeas relief because his sentence is disproportionate, violates his Sixth Amendment rights under *Blakely v. Washington*, and is vindictive. Respondent contends that the sentencing claims are unexhausted, not cognizable upon federal habeas review, and/or lack merit.

1.  Sentencing Proportionality

Petitioner first asserts that his sentence is disproportionate. Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceed the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948). To the extent that Petitioner asserts that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000); *Atkins v. Overton*, 843 F. Supp. 258,

260 (E.D. Mich. 1994). There is also no federal constitutional right to individualized sentencing. *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Habeas relief does not lie for perceived errors of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner is also not entitled to relief on any claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *Thomas*, 49 F.3d at 261. Petitioner was sentenced as a fourth habitual offender to 26 years eight months to 40 years imprisonment on his third-degree criminal sexual conduct conviction. The sentence was within the statutory maximum of life imprisonment for a fourth habitual offender. *See* Mich. Comp. L. §§ 750.520d(1)(b), 769.12. The trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment.

### 2. Sixth Amendment/*Blakely* Claim

Petitioner also seems to assert that the trial court violated his Sixth Amendment rights under *Blakely v. Washington*, 543 U.S. 296, 303-05 (2004) (state trial court's action in

sentencing defendant beyond the statutory maximum of the standard range for his offense based upon judicial finding of deliberate cruelty violated defendant's Sixth Amendment right to trial by jury), in imposing his sentence. Respondent has not addressed this issue.

The Court shall nonetheless deny relief on this claim. *Blakely* does not apply to Michigan's intermediate sentencing scheme. In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence. Both this Court and the United States District Court for the Western District of Michigan have examined Michigan's indeterminate sentencing scheme and have found no possible Sixth Amendment violation. *See, e.g, Connor v. Romanowski*, No. 05-74074, 2007 WL 1345066 (E.D. Mich. May 4, 2007); *Mays v. Trombley*, No. 2:06-CV-140043, 2006 WL 3104656, * 3 (E.D. Mich. Oct.31, 2006); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, * 2 (W.D. Mich. Nov.30, 2006); *accord People v. Drohan*, 475 Mich. 140, 160-62, 715 N.W.2d 778 (2006). Habeas relief is not warranted on this claim.

### 3. Vindictive Sentencing

Lastly, Petitioner appears to assert that his sentence was vindictive because he rejected a plea offer and exercised his right to trial. Respondent contends that this claim is unexhausted, but the Court will address it for the reasons stated *supra*.

A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States*, 468 U.S. 559, 568 (1984); *Waring v. Delo*, 7 F.3d 753, 758 (8th Cir. 1993); *Morales v. Miller*, 41 F. Supp. 2d 364, 380 (E.D.N.Y. 1999); *see also North Carolina v. Pearce*, 395 U.S. 711 (1969). However, while a criminal defendant "may not be subjected to more severe punishment for exercising his constitutional right to stand trial, the

mere imposition of a heavier sentence after a defendant voluntarily rejects a plea bargain does not, without more, invalidate the sentence." *United States v. Morris*, 827 F.2d 1348, 1352 (9th Cir. 1987) (citations omitted). When the record contains statements that give rise to an inference of vindictive sentencing, the record must affirmatively show that no improper weight was given to the failure to plead guilty. *Id.*

The record fails to support Petitioner's claim of judicial vindictiveness. The record indicates that the trial court sentenced Petitioner within the guideline range and the statutory maximum. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998). Petitioner has failed to establish a violation of his federal constitutional rights as to his sentencing issues. Habeas relief is not warranted.

**IV.     Conclusion**

Based upon the foregoing analysis, the Court concludes Petitioner is not entitled to federal habeas relief on the claims presented in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: June 13, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 13, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager